IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THE QUEEN'S MEDICAL CENTER, A Hawaii Non-Profit Corporation, et al., <br><br> Petitioner, <br><br> vs. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, <br><br> Respondent. | CIV. NO. 17-00361 JMS-RLP <br><br> ORDER (1) GRANTING PETITION TO COMPEL ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, ECF NO. 1; AND (2) GRANTING MOTION TO STRIKE JURY DEMAND, ECF NO. 48 |

**ORDER (1) GRANTING PETITION TO COMPEL ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, ECF NO. 1; AND (2) GRANTING MOTION TO STRIKE JURY DEMAND, ECF NO. 48**

## I. INTRODUCTION

On February 10, 2017, Petitioner The Queen's Medical Center ("Queens") and its insurance carrier, Travelers Casualty and Surety Company of America ("Travelers"), entered into a hand-written one-page agreement to arbitrate an insurance coverage dispute before a panel of three arbitrators. Travelers has refused to move forward with the arbitration, claiming that the arbitrator selected by Queens has a disqualifying conflict. Now before the court is Queens' Petition to Compel Arbitration Under the Federal Arbitration Act ("Petition to Compel"), ECF No. 1, and Queen's Motion to Strike Jury Demand, ECF No. 48. For the

reasons discussed below, the court GRANTS the Petition to Compel and the Motion to Strike Jury Demand.

## II. BACKGROUND

**A. Factual Background**

The history of the litigation underlying this coverage dispute is long and complex. Because the parties are aware of this history, as well as the coverage dispute, the court sets forth only those facts necessary to provide general background and context to this Order.

In early 2012, Pacific Radiation Oncology, LLC, along with physicians affiliated with Pacific Radiation Oncology (collectively, "PRO") brought the underlying suit against Queens in state court (later removed to federal court) making various claims relating to Queens' radiation oncology department. *See* Civ. No. 12-00064 LEK-KSC, ECF No. 1. In 2014, Queens filed a counterclaim against PRO. *Id.*, ECF No. 175. Travelers defended Queens under a reservation of rights. Pl.'s Ex. B, ECF No. 1-4.

On February 7, 2017, Magistrate Judge Kevin S.C. Chang directed Travelers to send a representative with full settlement authority to a February 10, 2017 settlement conference. Civ. No. 12-00064, ECF No. 878. Travelers complied, and sent John Godbout, Travelers' Managing Director and Counsel. Godbout Decl. ¶ 5, ECF No. 21-1.

On February 10, 2017, Queens and Travelers agreed on a process to handle their coverage dispute.[1] Travelers agreed to contribute $1,000,000 as a portion of the overall settlement package between Queens and PRO, and Queens reserved "its right to pursue its claims as a policyholder against Travelers." Pl.'s Ex. A, ECF No. 1-3. In order to resolve that coverage dispute, Queens and Travelers agreed to "(1) discuss/mediate the disputed issues regarding Queens' rights under the policy for 45 days and, if no agreement can be reached, (2) arbitrate their disputes in Hawaii on an expedited basis before a panel of three arbitrators with a decision deadline of May 31, 2017." *Id.*[2]

After mediation failed, the parties agreed each would select one arbitrator, and those two arbitrators would then select the third. Queens selected Alan Van Etten and Travelers selected Michael Tanoue. After Van Etten provided his required disclosures, Travelers objected on three grounds: 1) in the underlying

---

[1] Travelers now claims that Paul Alston (counsel for Queens in this matter) acted as coverage counsel for Queens at this settlement conference. ECF No. 21 at 5 n.1. But, as Travelers admits, the law firm of Anderson Kill acted as Queens' coverage counsel before and after the settlement conference, and Ms. Bronster was informed, prior to the settlement conference, that no counsel from Anderson Kill would attend the February 10 settlement conference. *Id*. Further, at the settlement conference, Mr. Alston informed Mr. Godbout that, under Hawaii law, "the defense counsel represents only the insured and is charged with representing all of the insured's interests, which included it rights to seek indemnity." Alston Decl. ¶ 4, ECF No. 31-1.

[2] It appears that Queens and PRO reached a settlement on February 10, 2017, and then placed that settlement on the record on February 13, 2017. Godbout Decl. ¶ 6, ECF No. 21-1; Civ. No. 12-00064 LEK-KSC, ECF No. 899.

3

litigation, Van Etten acted as counsel for PRO in obtaining insurance coverage in connection with Queen's counterclaim against PRO;[3] 2) Van Etten previously represented clients adverse to Travelers in coverage matters; and 3) Van Etten has used Queens' health services. *See* ECF Nos. 1-11; 16-1; 21-3. As a result, the arbitration has stalled — Queens has named Van Etten to serve as an arbitrator, but Travelers refuses to proceed with Van Etten.

**B.     Procedural Background**

Queens filed its Petition to Compel Arbitration on July 25, 2017. ECF No. 1. Travelers filed an Opposition to the Motion to Compel on September 11, 2017, ECF No. 21, and Queens filed its Reply on October 10, 2017, ECF No. 31.[4] After further settlement discussions failed, a hearing was held on April 9, 2018.

### III.  STANDARD OF REVIEW

"With limited exceptions, the Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate

---

[3] In his May 26, 2017 disclosure, Van Etten stated that he represented PRO "for the purposes of obtaining insurance coverage only" and he "did not become privy to attorney-client privileged information from either side during that representation of PRO." ECF No. 1-11 ¶ 6.

[4] On April 6, 2018, Travelers filed a 13-page "Jury Demand Pursuant to 9 U.S.C. § 4." ECF No. 47. The next day, Queens filed a Motion to Strike the Jury Demand. ECF No. 48. This "Jury Demand" was filed without leave of court, and makes arguments not raised in Traveler's Opposition memorandum. To the extent this "Jury Demand" is a disguised sur-reply, it is clearly disallowed. *See* Local Rule 7.4 (requiring leave of court to file sur-reply). And, to the extent it is a formal request for a jury trial on disputed issues, it is filed late. *See* 9 U.S.C. § 4. Thus, the Motion to Strike Jury Demand is GRANTED.

4

commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). The Act's interstate commerce language is read broadly, to extend to the full reach of Congress' power under the Commerce Clause. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-77 (1995). Thus, if the interstate commerce requirement is met, the FAA applies to the arbitration agreement. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017).

Written arbitration agreements under the FAA "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Kramer*, 705 F.3d at 1126 ("With limited exceptions, the [FAA] governs the enforceability of arbitration agreements in contracts involving interstate commerce."). When an agreement falls within the FAA, a "strong default presumption is that the FAA, not state law, supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002), *opinion amended on other grounds*, 289 F.3d 615 (9th Cir. 2002) (citing *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1213 (9th Cir. 1998)) (other citation omitted). "To overcome that presumption, parties to an arbitration agreement must evidence a 'clear intent' to incorporate state law rules for arbitration." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004); *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In determining whether to compel arbitration, a district court may not review the merits of the dispute; rather, "the court must determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (quotation marks and citation omitted). "If the answer is yes to both questions, the court must enforce the agreement." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) ("Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.") (quotation marks and citations omitted).

To determine whether a valid agreement to arbitrate exists, a district court must apply "ordinary state-law principles that govern the formation of contracts." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th

Cir. 2017) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[A]greements to arbitrate [may] be invalidated by generally applicable [state-law] contract defenses" to enforceability such as "fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see Lowden*, 512 F.3d at 1217 ("[Determining] whether . . . a valid agreement to arbitrate exists . . . requires [a court] to consider what is unconscionable and unenforceable under . . . state law."). Under Hawaii law, "[t]he party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists," and if met, the burden then "shifts to the opposing party to present evidence on its defenses to the arbitration agreement." *Siopes v. Kaiser Found. Health Plan, Inc.*, 130 Haw. 437, 446, 312 P.3d 869, 878 (2013).

## IV. **DISCUSSION**

There is no question that the parties entered into a written arbitration agreement. As part of that overall agreement, Travelers agreed to contribute $1,000,000 towards the Queens/PRO settlement (which it did), and both parties agreed, if mediation failed, to "arbitrate their dispute in Hawaii on an expedited basis before a panel of three arbitrators with a decision deadline of May 31, 2017." Pl.'s Ex. A, ECF No. 1-3.

Travelers now argues, however, that the Motion to Compel should be denied because: 1) the FAA does not apply to the agreement; 2) the agreement

7

does not set forth key elements of an arbitration, such as rules to govern the arbitration or to determine the scope of discovery, the issuance of subpoenas, and the selection of arbitrators; and 3) Alan Van Etten, Queen's chosen arbitrator, has a disqualifying conflict, and Travelers never agreed to a non-neutral arbitrator.[5]

## A.  The FAA Applies to the Agreement

Travelers' suggestion that the FAA doesn't apply to the agreement is specious.  Queens, a Hawaii corporation, purchased insurance from Travelers, a Connecticut corporation that sells insurance nationwide.  Answer ¶ 3, ECF No. 19.  As a result, the policy and agreement evidence a commercial transaction that involves interstate commerce.  *See* 9 U.S.C. § 2; *Allied-Bruce*, 513 U.S. at 282; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  And because the agreement is governed by the FAA, "the FAA, not state law, supplies the rules for arbitration." *Sovak*, 280 F.3d at 1269.  This is true regardless of whether the parties specifically agreed to submit to arbitrate under the FAA — the agreement is in interstate commerce, and thus the FAA applies. *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) (stating that "if a contract involves interstate commerce, a court must resolve arbitration disputes according to the FAA").

---

[5]  Travelers does not dispute that John Godbout executed the agreement on behalf of Travelers or that the agreement encompasses the coverage dispute between the parties.

8

## B. The Agreement is Valid and Enforceable

Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And when determining the validity of an agreement to arbitrate, a court should apply "ordinary state-law principles that govern the formation of contracts" to decide "whether the parties agreed to arbitrate a certain matter." *First Options of Chi., Inc.*, 514 U.S. at 944; *see also Norcia*, 845 F.3d at 1283.

Under Hawaii law, three elements are required to prove a valid arbitration agreement: "(1) it must be in writing; (2) it must be unambiguous as to the intent to submit disputes or controversies to arbitration; and (3) there must be bilateral consideration." *Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 531, 135 P.3d 129, 140 (2006). "With respect to the second requirement, 'there must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract.'" *Siopes*, 130 Haw. at 447, 312 P.3d at 879 (emphasis omitted) (quoting *Douglass*, 110 Haw. at 531, 135 P.3d at 140). "The existence of mutual assent or intent to accept is determined by an objective standard." *Id.* Under the third element, bilateral consideration exists where there is mutual assent to arbitrate — that is, where the parties both agree to "forego their respective rights to a judicial forum, given the delay and expense which results from the use of the

9

federal and state court systems, in order to benefit from the resulting time and cost savings" of arbitration. *Brown v. KFC Nat'l Mgmt. Co*., 82 Haw. 226, 239-40, 921 P.2d 146, 159-60 (1996). The court first addresses elements 1 and 3, and then turns to element 2.

The first element is not in question — the agreement is in writing. And as to the third element, there was certainly bilateral consideration. As part of the agreement, Travelers agreed to pay $1,000,000 to contribute towards the Queens/PRO settlement, but Queens reserved its right to pursue coverage claims against Travelers. Pl.'s Ex. A, ECF No. 1-3. And to settle those very claims, the parties agreed to a framework that included arbitration (at least if the effort at mediation failed, which it did) in lieu of a judicial forum. *See Brown*, 82 Haw. at 239-40, 921 P.2d at 159-60 (finding that an agreement to arbitrate is supported by bilateral consideration where both parties forego their right to a judicial forum). The first and third elements are easily satisfied.

As to the second element, there must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract. Travelers argues, in essence, that the agreement lacks definiteness — that is, the parties did not agree on all *essential* terms of the agreement, such as rules to govern the arbitration or to determine the scope of discovery, the issuance of subpoenas, and the selection of arbitrators.

The court finds, however, that these missing terms are not essential and thus need not be in writing to create a binding arbitration agreement. And in so finding, the court agrees with the many other courts finding that such missing terms from an FAA-governed arbitration agreement are non-essential. *See Wework Cos., Inc. v. Zoumer*, 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) (holding that although the agreement to arbitrate was "admittedly terse," it was valid because "the language indicates that the parties agreed to be bound" and "[t]he lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements") (citing 9 U.S.C. §§ 5, 7); *Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 236 (W.D.N.Y. 2014) (finding no authority to suggest that the rules and procedures governing arbitration are essential terms); *Gerena v. Neurological Surgery, P.C.*, 2016 WL 3647782, at *4 n.4 (E.D.N.Y. June 9, 2016) (finding the lack of the following terms to be "non-essential" to valid agreement to arbitrate: the method for selecting an arbitrator, the arbitral forum, the procedural law to be followed, the substantive law to be applied, and the location where the arbitration should be held); *Daskalakis v. Forever 21, Inc.*, 2016 WL 4487747, at *4-5 (E.D.N.Y. Aug. 25, 2016) (rejecting argument that arbitration agreement is invalid for lack of definiteness in agreement that did not identify the arbitral forum or location, the identity of or method for selecting an arbitrator, the arbitration

procedures, or the choice of law); *Lockard v. EYM King of Kansas, LLC*, 2017 WL 4012203, at *5 (D. Kan. Sept. 12, 2017) (finding lack of arbitral procedures non-essential, and thus not invalidating the arbitration agreement); *Pingel v. Gen. Elec. Co.*, 2014 WL 7334588, at *10 (D. Conn. Dec. 19, 2014) (finding that rules of arbitration "are not essential terms, which if absent from the arbitration agreement, would render the agreement void") (emphasis omitted); *Henry v. New Orleans Louisiana Saints L.L.C.*, 2016 WL 2901775, at *10 (E.D. La. May 18, 2016) ("The lack of specific terms governing the arbitration's procedure does not invalidate the arbitration agreement."); *Hooters of Am., Inc. v. Phillips*, 39 F. Supp. 2d 582, 606-07 (D.S.C. 1998) ("In the orthodox situation the content of arbitration rules would not constitute a material term of the agreement because such rules would address merely procedural matters of the forum.").

And it makes sense that such "missing" terms are non-essential. Once the arbitrators are selected, they can set the procedural rules, including issuance of subpoenas and the scope of discovery (within the expedited framework agreed to by the parties). *Yil Ki Moon, v. Woongjin Coway USA, Inc.*, 2012 WL 1109051, at *3 (D. Haw. Apr. 2, 2012) ("Upon selection of an arbitrator, the arbitrator shall select the rules and terms of arbitration."); *Daskalakis*, 2016 WL 4487747, at *4-5 (stating that once an arbitrator is selected, the arbitrator "can determine the procedural aspects of arbitration."); *Lockard*, 2017 WL 4012203, at *5 (same).

Travelers also argues that the agreement is void because it doesn't set forth whether the parties could select non-neutral arbitrators. But having determined that the FAA applies, the standard for neutrality is set forth in 9 U.S.C. § 10(a)(2): a court may vacate an arbitration award "where there was evident partiality . . . in the arbitrators." 9 U.S.C. § 10(a)(2). *See Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir. 1994) (explaining that the standard for determining partiality for arbitrators differs from standard for judges). "Evident partiality has been found in nondisclosure cases and actual bias cases." *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir. 1996) (citing *Schmitz*, 20 F.3d at 1045).[6] Given that this is the standard for vacating an arbitration award, it logically serves as the standard parties should utilize when selecting arbitrators under the FAA.

In short, the court finds that the lack of specificity in the arbitration agreement as to exactly how the arbitration will proceed isn't material. The court

///

///

///

---

[6] Here, Travelers is not challenging the sufficiency of Van Etten's disclosures. Instead, it claims that, based on those disclosures, he cannot serve as an arbitrator. And to prevail on a claim of actual bias, "[t]he appearance of impropriety, standing alone, is insufficient." *Woods*, 78 F.3d at 427 (quoting *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985)).

also finds that, under the FAA, the "evident partiality" standard applies to arbitrators. The agreement is valid and enforceable.[7]

## C. The Court Will Not Rule on Van Etten's Qualifications Pre-Award

Travelers claims that the court should deny the Motion to Compel because of Van Etten's alleged conflicts. In return, Queens argues that Van Etten is qualified under 9 U.S.C. § 10 because he made the required disclosures and they reflect no actual bias. To be clear, Travelers has never disputed the process to select the three arbitrators — each side selects one arbitrator, and those two arbitrators select the third.[8] Instead, Travelers disputes whether Van Etten can serve as a neutral mediator.

To start, it's important to note what this case is not about — neither party is asking the court to invoke 9 U.S.C. § 5, giving the court authority to appoint arbitrators in limited circumstances. Instead, Travelers is opposing Queens' Motion to Compel on the grounds that Van Etten is not neutral, arguing

---

[7] Travelers also invokes section 4 of the FAA, which states that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to a trial thereof." 9 U.S.C. § 4. To be entitled to a trial, Travelers would have to make a showing that an agreement to arbitrate was not actually reached or that it would be relieved of its obligation to arbitrate. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013); *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002). Here, because the court has concluded that there is no issue as to the "making of the arbitration agreement," there is no issue for a trial to resolve. Travelers' request for a trial is therefore denied.

[8] And, in fact, this process isn't groundbreaking; it's how a three-person arbitration panel is typically chosen.

14

that the parties never agreed to the selection of a non-neutral arbitrator. In essence, Travelers seeks a court order finding that Van Etten is unqualified to serve prior to any arbitration award.

Courts have consistently held that they lack the power to disqualify an arbitrator before the arbitration is complete or while it is pending. *See Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 490 (5th Cir. 2002) ("[T]here is no authorization under the FAA's express terms for a court to remove an arbitrator from service. Rather, even where arbitrator bias is at issue, the FAA does not provide for removal of an arbitrator from service prior to an award, but only for potential vacatur of any award."); *Smith v. Am. Arbitration Ass'n, Inc.*, 233 F.3d 502, 506 (7th Cir. 2000) ("The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered."); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997) ("Although the FAA provides that a court can vacate an award '[w]here there was evident partiality or corruption in the arbitrators,' it does not provide for pre-award removal of an arbitrator. Thus, an agreement to arbitrate before a particular arbitrator may not be disturbed, unless the agreement is subject to attack under general contract principles 'as exist at law or in equity.'") (internal citations omitted); *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 843-44 (8th Cir. 1988) ("Appellants cannot obtain judicial review of the arbitrators' decisions

about the qualifications of the arbitrators or other matters prior to the making of an award."); *John Hancock Life Ins. Co. v. Emp'rs Reassurance Corp.*, 2016 WL 3460316, at *3 (D. Mass. June 21, 2016) ("The FAA contains no provision expressly granting courts the authority to remove a party-appointed arbitrator prior to the conclusion of the arbitration."); *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, 2010 WL 431592, at *3 (N.D. Ill. Feb. 1, 2010) (refusing to disqualify allegedly biased arbitrator, even though the arbitration agreement required disinterested arbitrators, because issues of bias or qualification can only be challenged post-award); *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 935 (N.D. Cal. 2003) ("[C]ourts have consistently held that courts do not have the power under the FAA to disqualify an arbitrator while proceedings are pending."); *Crim v. Pepperidge Farm, Inc.*, 32 F. Supp. 2d 326, 331 (D. Md. 1999) ("Absent extraordinary circumstances under which the Court's equitable powers could be invoked, such as overt misconduct on the part of the arbitrator, the remedy available to a party who suspects that an arbitrator will be impartial is to seek to vacate the award after it is rendered.").

The court recognizes, however, that the rule in the Ninth Circuit appears to be slightly different. *Aerojet-General Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248 (9th Cir. 1973), stated that "judicial review prior to the rendition of a

final arbitration award should be indulged, if at all, only in the most extreme cases." *Id.* at 251. In so ruling, *Aerojet-General*

> noted the considerations that weighed heavily against a mid-arbitration intervention, explaining that "[t]he basic purpose of arbitration is the speedy disposition of disputes without the expense and delay of extended court proceedings," and that "[t]o permit what is in effect an appeal of an interlocutory ruling of the arbitrator would frustrate this purpose."

*In re Sussex*, 781 F.3d 1065, 1072 (9th Cir. 2015) (quoting *Aerojet-General*, 478 F.2d at 251). *Aerojet-General* also recognized "the remote possibility of an extreme case that could cause 'severe irreparable injury' from an error that 'cannot effectively be remedied on appeal from the final judgment' and that would result in 'manifest injustice.'" *Id*. at 1072-73 (quoting *Aerojet-General*, 478 F.2d at 251).

But, as was found in *Aerojet-General*, this is "emphatically not such a case." *Aerojet-General*, 478 F.2d at 251. The court will not determine, pre-award, whether Van Etten meets the actual bias prong of the "evident partiality" standard. *See* 9 U.S.C. § 10. It is sufficient, at this time, to state that Travelers has fallen well short of showing that this is the sort of extreme case that might warrant pre-arbitration intervention.

///

///

///

Based on the foregoing, the court finds that the arbitration agreement: 1) is controlled by the Federal Arbitration Act; 2) is valid; and 3) encompasses the parties' claims. Further, the court declines to rule on the qualifications of Van Etten as an arbitrator.

## V. **CONCLUSION**

The Motion to Compel Arbitration and Motion to Strike Jury Demand are GRANTED. The parties are ordered to arbitrate under the guidelines set forth in this Order. As discussed and agreed during the April 9 hearing, Travelers is given until April 19, 2018 to decide whether it wants to proceed with Michael Tanoue or name a different arbitrator (if Travelers makes no new election by April 19, Michael Tanoue shall proceed as Travelers' chosen arbitrator). The two chosen arbitrators (that is, Van Etten and the arbitrator chosen by Travelers) shall have until April 26, 2018 to select the third arbitrator. If the two arbitrators are unable to select the third, each party will submit three names to the court, with the court making the selection.

The arbitration agreement intended that, if mediation failed, the arbitration decision would be rendered within 65 days. Thus, although the court

///

///

///

will not set a hard deadline, the court orders the parties and arbitrators to work in good faith towards a "decision deadline" within 65 days of the date when all three arbitrators are selected.

The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 9, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Queens Med. Ctr. v. Travelers Cas. & Sur. Co. of Am.*, Civ. No. 17-00361 JMS-RLP, Order (1) Granting Petition to Compel Arbitration Under the Federal Arbitration Act, ECF No. 1; and (2) Granting Motion to Strike Jury Demand, ECF No. 48